BOATMEN'S NATIONAL BANK of Arkansas *v.* Hon. John
COLE, Judge, et al.

96-887 947 S.W.2d 362

Supreme Court of Arkansas
Opinion delivered June 23, 1997

*Allen Law Firm,* by: *H. William Allen,* for petitioner.

*Morgan Welch & Associates,* by: *Donald K. Campbell, III,* for respondents.

ANNABELLE CLINTON IMBER, Justice. Pursuant to Ark. Sup. Ct. R. 1-2(a)(6), Petitioner Boatmen's National Bank of Arkansas, Inc., has filed a petition for a writ of prohibition alleging that venue for the underlying action does not lie in the Saline County circuit court. We deny the writ for the reasons stated below.

Respondent Fleming Electric, Inc., filed a complaint and an amended complaint in Saline County circuit court, substantially alleging as follows. Fleming, an Arkansas corporation located in Saline County, established a number of checking accounts at various times with Worthen National Bank of Arkansas (and therefore its successor in interest, Boatmen's).[1] In 1990, Fleming hired Respondent Alicia Ives, a resident of Saline County, to handle its accounts payable. In 1992, Ives was designated as Fleming's chief financial officer. Fleming notified Boatmen's that Ives had authority to request information concerning Fleming's accounts.

---

[1] Fleming's complaint names both Worthen and Boatmen's at various times. For ease of reference, we shall simply refer to Boatmen's.

Beginning in August of 1994, Ives allegedly presented a Fleming check to Boatmen's, payable to Respondent L.C. Brock and bearing the forged signature of C. Ann Fleming, Fleming's president and chief executive officer. Boatmen's paid the $3,258.00 check despite having the actual signature of C. Ann Fleming on file. This check represented the first in a continuing course of alleged check forgeries that would continue through July of 1995. In September of 1994, Ives presented Boatmen's with a letter bearing C. Ann Fleming's forged signature, purporting to give Ives unlimited authority over all Fleming accounts. Fleming alleges that Boatmen's had a duty to inquire to C. Ann or Loren Fleming in an attempt to confirm the letter, which it failed to do. Following September 1, 1994, Fleming alleges numerous instances where Ives forged the signature of C. Ann Fleming on Fleming checks, causing Boatmen's to debit various Fleming accounts and to make various deposits or transfers into accounts not owned by Fleming. Boatmen's allegedly paid these checks "despite the forged signature and despite the fact that the actual (and distinctly different) signature of C. Ann Fleming was on file with [Boatmen's] at the time." Some of the checks bearing the forged signatures were payable to Brock while others were payable to corporations, partnerships, or proprietorships owned by Ives and/or Respondent Matthew Carman, a resident of Pulaski County.

Ives also allegedly made various transfers and deposits into a "forged" Fleming checking account that Ives created at Boatmen's without authorization. At the time Ives opened this account, Fleming alleges that Boatmen's did not require any corporate resolution authorizing its creation. After the creation of the forged Fleming account, Ives orally transferred funds from legitimate Fleming accounts into the forged Fleming account.

Ives eventually presented Boatmen's with a forged Fleming resolution bearing Ives's signature and the forged signature of C. Ann Fleming, purporting to authorize the creation of the forged Fleming checking account. Fleming further alleges that at various times Ives orally requested that Boatmen's transfer Fleming funds into the forged Fleming checking account, and that Boatmen's also allowed Ives to orally transfer funds from the forged account into accounts owned by entities other than Fleming. Fleming also

contends that Boatmen's permitted the placement of Fleming deposits in the forged account, despite its knowledge that Fleming normally placed its deposits into a designated "deposit" account. Ives additionally drew several checks on the forged Fleming account using the forged signature of C. Ann Fleming. These checks were made payable to L.C. Brock and various entities owned by Ives and Carman.

Fleming's amended complaint alleges causes of action against Boatmen's for negligence, conversion, breach of contract, breach of warranty, breach of fiduciary duty, and constructive fraud. On the negligence count, Fleming specifically alleges that Boatmen's improperly disbursed funds credited to or payable to Fleming, and that it failed to act with due care in debiting and failing to credit Fleming's account. Fleming also sued Ives for conversion, breach of fiduciary duty, and breach of warranty. The complaint contains an allegation that the defendants should be held jointly and severally liable.

Boatmen's, a resident of Pulaski County, moved to dismiss the complaint for lack of venue. The trial court denied this motion, finding that venue was proper "due to the simultaneous or 'successive' tortious conduct of the various defendants in this suit which resulted in a single injury to [Fleming.]" The trial court also found that Fleming's "well-pleaded" claim of constructive fraud against Boatmen's established venue. Boatmen's seeks a writ of prohibition from this court, arguing that venue does not lie with the Saline County circuit court.

We have often stated that a writ of prohibition will issue only when the trial court completely lacks jurisdiction and there is no other way to stop the proceedings. *See, e.g., Ford v. Wilson*, 327 Ark. 243, 939 S.W.2d 258 (1997); *Nucor Holding Corp. v. Rinkines*, 326 Ark. 217, 931 S.W.2d 426 (1996). While venue is a procedural matter, rather than an issue of jurisdiction, this court has historically issued the writ when venue is improper as to a party. *See Steve Standridge Ins., Inc. v. Langston*, 321 Ark. 331, 900 S.W.2d 955 (1995). In doing so, we have characterized the venue issue "as one of jurisdiction of the person, the improper assertion of which, in that instance, justifies issuance of a writ of

prohibition." *Id.* (citing *Prairie Implement Co., Inc. v. Circuit Ct.*, 311 Ark. 200, 844 S.W.2d 299 (1992) (explaining this court's tradition of issuing writ of prohibition where venue is improper)). In deciding whether prohibition will lie, we confine our review to the pleadings. *Wise Co., Inc. v. Clay Circuit*, 315 Ark. 333, 869 S.W.2d 6 (1993).

■ Arkansas Code Annotated § 16-60-116(a) (1987), the "catch-all" venue provision, reads as follows:

> (a) Every other action may be brought in any county in which the defendant, or one (1) of several defendants, resides or is summoned.

Additionally, this court has added a so-called "gloss" to this venue statute — when venue is appropriate as to one defendant, then it is only proper as to co-defendants who are jointly liable with the resident defendant. *See Steve Standrige Ins., Inc. v. Langston*, 321 Ark. 331, 900 S.W.2d 955 (1995). Therefore, we must decide whether Fleming has alleged joint liability as between Boatmen's and Ives, the resident defendant.

■ It is of no consequence that Fleming has failed to allege that Boatmen's and Ives acted together in causing it harm. Arkansas has long since abolished the requirement that joint tortfeasors act in concert to result in joint and several liability. *See, e.g.*, *Wymer v. Dedman*, 233 Ark. 854, 350 S.W.2d 169 (1961). Rather, we have said that joint and several liability is determined by impact; where there is a single injury, it is irrelevant that the acts of the individual defendants would not have caused the ultimate result. *McGraw v. Weeks*, 326 Ark. 285, 930 S.W.2d 365 (1996). Stated another way, "where concurrent negligent acts result in a single injury, each tortfeasor is jointly and severally liable, and a plaintiff can institute an action against any or all tortfeasors, individually or jointly." *Woodward v. Blythe*, 249 Ark. 793, 462 S.W.2d 205 (1971).

While Boatmen's might concede the above-recited definition of joint liability, it nonetheless argues that the principle has no application in the present case due to the character of the alleged tortious conduct found in Fleming's complaint. Against Boatmen's, Fleming's allegations involve the bank's negligence, while

the allegations against Ives sound in intentional tort. Therefore, the question presented is whether for purposes of venue under Ark. Code Ann. § 16-60-116(a), multiple defendants may be held jointly liable where the plaintiff claims that the nonresident defendant is liable for negligent conduct and the resident defendant is liable for intentional tortious conduct.

Neither party cites us an Arkansas case directly answering the question. Boatmen's relies on a line of cases beginning with *Barr v. Cockrill*, 224 Ark. 570, 275 S.W.2d 6 (1955), where a receiver for an insurance exchange sued to recover assessments against a number of policyholders on their individual policies. The receiver filed suit against all of the policyholders in Pulaski County, yet only a few of the defendants resided there. The receiver asserted proper venue on a theory of joint liability.

On a petition for writ of prohibition to this court, we held that venue did not lie as to the nonresident policyholders. The *Barr* court held that they did not share joint liability with the resident policyholders. The court explained that "[w]e use the term 'jointly liable' in the sense that there must be a common liability of the defendants on the same cause of action." *Id.* In examining the complaint, the court reasoned that it only alleged several liability and that separate judgments were sought against each policyholder on different debts.

A related case cited by Boatmen's is *Junction City Sch. Dist. v. Alphin*, 313 Ark. 456, 855 S.W.2d 316 (1993), where teachers in a Union County school district sued their district alleging that it distributed an increase in revenue to certified personnel in violation of a statute, and sued the state department of education for failing to terminate state aid to the district when it failed to comply with the statute. The lawsuit was filed in Pulaski County, and the district moved to dismiss for lack of venue. The trial court denied the motion and the teachers obtained a judgment against the district and the department.

On appeal, this court reversed the judgment against the district for lack of venue. The issue framed by the court was "whether joint liability was alleged against the School District and the Department." Relying in part on *Barr, supra*, the court

answered the question in the negative. The court emphasized that the remedies requested from each defendant were different. While the teachers requested damages against the district, they requested "a directive that state aid be terminated due to violation of the statute" against the department. Given that the two requested remedies were exclusive as to each defendant, liability could not be considered "joint" — the district could not terminate state aid, while the department was not liable for damages. This was separate liability arising out of the same circumstance, but was not joint liability.

Boatmen's also relies on *Steve Standridge Ins., Inc. v. Langston*, 321 Ark. 331, 900 S.W.2d 955 (1995), a prohibition case where the owners of a destroyed airplane sued their insurance carrier alleging coverage, and brought a negligence action against the insurance agency who procured their policy. The lawsuit was brought in the county where the carrier was served. The insurance agency, which resided in a different county, petitioned for a writ of prohibition alleging that venue was improper.

The airplane owners contended that venue was proper as to both defendants under a theory of joint liability, but this court rejected the argument finding that "there was no allegation of joint liability." *Steve Standridge, supra*. Noting the added "gloss" on the catch-all venue statute, we quoted from *Barr, supra*, and its explanation of joint liability as common liability on "the same cause of action." While the claims in *Steve Standridge* arose out of the same occurrence or transaction, they were not joint liability claims, and stated different causes of action: a breach-of-contract claim against the insurance carrier and a negligence action against the insurance agency.

Boatmen's relies on *Barr* and its progeny to argue that it cannot be jointly liable with Ives given that Fleming's theory of recovery is not based on the "same cause of action," i.e., negligence and intentional tort. However, we do not read *Barr* to mandate such an interpretation of joint liability on the alleged facts of the present case. *Barr's* explanation of joint liability was easily understandable where the plaintiff there sued individual policyholders on their individual insurance contracts. Since recovery

was sought on individual debts and contracts, there was no common liability on the same cause of action. Likewise, in *Alphin, supra*, the plaintiffs sought different and exclusive remedies from each defendant, while in *Steve Standridge, supra*, the plaintiff sued one defendant in contract and the other in tort.

None of these cases addresses the situation alleged in the present case, where the *tortious* conduct of multiple defendants has combined to produce a single and indivisible injury, albeit on different theories of tort recovery. The RESTATEMENT (SECOND) OF TORTS § 875 (1979), provides that:

> Each of two or more persons whose *tortious* conduct is a legal cause of a single and indivisible harm to the injured party is subject to liability to the injured party for the entire harm.

(Emphasis added.) Fleming alleges that "[t]he acts and omissions of each of the defendants. . . as alleged herein. . . combined and concurred, proximately caused [sic] indivisible injury to the plaintiff." Thus, it is one of Fleming's theories that but for the failure of Boatmen's to exercise ordinary care with respect to Fleming accounts, Ives would not have been able to carry out her embezzlement scheme. In other words, Fleming alleges that Boatmen's negligence is a legal cause of the harm it suffered. While the intentional or criminal act of a third party may be a superseding cause of harm to another, such issues of legal or proximate causation are ill-suited for analysis at this stage of the proceedings, where our review is confined to the pleadings.

For example, in *Keck v. American Employment Agency, Inc.*, 279 Ark. 294, 652 S.W.2d 2 (1983), the plaintiff sued the employment agency that directed her to a prospective employer who raped her. The trial court granted the employment agency a directed verdict, finding no substantial evidence of negligence. This court reversed, holding that a jury question of negligence existed given that the plaintiff had properly stated a negligence claim based on the agency's duty of care and a breach of that duty. While the criminal act of the third party might have relieved the agency of liability, the *Keck* court observed that "[t]he Restatement of Torts recognizes by two rules that simply because a third person commits a crime, that does not always exonerate one who

created the situation which allowed the crime to occur." *Id.* (citing RESTATEMENT (SECOND) OF TORTS §§ 448-49 (1965)). Similarly, in *Franco v. Bunyard*, 261 Ark. 144, 547 S.W.2d 91 (1977), *cert. denied*, 434 U.S. 835 (1977), we held that a question of fact existed as to the foreseeability of harm created when a gun dealer negligently sold a gun to an individual who shot and killed the plaintiff's decedent.

 Guidance can also be found in Arkansas law pertaining to contribution. Arkansas's version of the Uniform Contribution Among Tortfeasors Act defines "joint tortfeasors" as follows:

> two (2) or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them.

Ark. Code Ann. § 16-61-201 (1987). Furthermore, Ark. Code Ann. § 16-61-202(4) (1987) allows for the consideration of the "relative degrees of fault" of joint tortfeasors where an equal distribution would be inequitable. Therefore, when the jury is faced with joint tortfeasors liable in different degrees of fault, it may apportion fault accordingly.

Illustrative is *Erkins v. Case Power & Equip. Co.*, 164 F.R.D. 31 (D.N.J. 1995), a case involving the New Jersey Joint Tortfeasors Contribution Act. In *Erkins* the plaintiff, whose decedent was killed in a construction accident, brought a products-liability suit against the manufacturer of a backhoe. The manufacturer alleged that the accident was due to the decedent's negligence, but additionally sought contribution from contractors that had hired the decedent's employer based on their negligence in failing to conduct safety meetings. The manufacturer thus sought leave to file a third-party complaint against the contractors.

The contractors argued that impleader was inappropriate because the manufacturer's third-party negligence claims were separate and distinct from the plaintiff's strict products-liability claim. However, the federal district court refused to construe the New Jersey contribution statute so narrowly. In examining the statute's definition of joint liability, the *Erkins* court observed that "the parties must act together in committing the wrong, or their acts, if independent of each other, must unite in a single injury."

*Id.* All three parties were potentially liable, the manufacturer in strict products liability, and the contractors for negligence. The court further found that the contribution statute "contain[ed] no requirement that joint tortfeasors be liable in tort under the same theories of liability." Furthermore, Fed. R. Civ. P. 14 allowed a defendant to seek contribution in a single action, rather than instituting a second action after an initial determination of liability:

> That the joint tortfeasors' conduct gives rise to liability under two entirely different theories does not foreclose a third-party claim for contribution, nor does the fact that the plaintiff has failed to sue either of the putative third-party defendants under any theory of recovery.

*Id.* Given that New Jersey law allowed contribution among parties held liable under different theories of liability, the *Erkins* court granted the manufacturer's motion for leave to file a third-party complaint.

While the present case does not yet involve a claim for contribution, the rationale presented in *Erkins* is persuasive. The fact that Boatmen's and Ives are allegedly liable on different theories of tort recovery does not preclude a finding of joint liability in tort. This is because their negligent and intentional acts have allegedly combined to produce a single injury. Based on these alleged facts, we find that Fleming's complaint alleges joint liability as between Boatmen's and Ives, and hold that venue properly lies as to Boatmen's in Saline County under Ark. Code Ann. § 16-60-116(a). We therefore deny the writ of prohibition.

Because we deny the writ on joint-liability grounds, we do not reach the sufficiency of Fleming's constructive-fraud allegation. Additionally, we decline to address the merits of Boatmen's claim that various provisions of the Uniform Commercial Code have displaced Fleming's negligence claim, and that the UCC's liability scheme precludes any potential joint liability between Ives and Boatmen's. Such a determination would be premature at this stage of the proceedings, where we merely examine the pleadings for allegations to support venue.

Writ denied.