**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 9 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JOE N. STEWART; OZZIE REE
STEWART,

      Plaintiffs,

v.

EARLE M. JORGENSEN
CORPORATION; LARRY R.
PITTMAN,

      Defendants-Cross-Claimants -
Appellees,

v.

THE KANSAS CITY SOUTHERN
RAILWAY COMPANY,

      Defendant Cross-Defendant -
Appellant.

No. 03-7133
(E.D. Oklahoma)
(D.C. No. CIV-00-448-P)

---

**ORDER AND JUDGMENT**[*]

---

    [*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgment; nevertheless, an order and judgment may be cited under the terms and conditions of the 10th Cir. R. 36.3.

Before **EBEL**, **O'BRIEN**, Circuit Judges, and **STEWART**, District Judge.[**]

_____

## SUMMARY

The Kansas City Southern Railway Company ("the Railroad") appeals a ruling from the Eastern District of Oklahoma. One of the Railroad's trains collided with a tractor-trailer rig driven by Larry P. Pittman ("Pittman") and owned by the Earle M. Jorgenson Corporation ("EMJ") (collectively "the EMJ Parties"). Jon Stewart ("Stewart") was a conductor on the train and was injured in the collision. He brought claims against the EMJ Parties and against the Railroad, his employer. He settled his claims first with the Railroad and then with the EMJ Parties. After settling with Stewart, the Railroad amended its complaint and sought reimbursement of the funds it expended in settlement from the EMJ Parties under the theory of indemnity or, in the alternative, contribution.

The district court granted declaratory judgment in favor of the EMJ Parties pursuant to Title 28 U.S.C. § 2201(a). Applying Arkansas law, the district court found that the Railroad and the EMJ Parties were joint tortfeasors. On this basis, the district court found that indemnity did not apply. Because the Railroad had

_____

[**] The Honorable Ted Stewart, District Judge, District of Utah, sitting by designation.

settled with Stewart prior to the EMJ Parties doing the same, the district court also found that Arkansas law barred the Railroad's claim for contribution.

On appeal, the Railroad brings two challenges to the decisions of the district court. The Railroad avers that the district court abused its discretion when it considered the EMJ Parties' motion for declaratory judgment. It also argues that the court erred in its determination that the Railroad and the EMJ Parties were joint tortfeasors, thus barring its claims for contribution and indemnity.[1]

We AFFIRM.

## BACKGROUND

On December 5, 1997, a tractor-trailer rig, owned by EMJ and driven by Pittman, collided with one of the Railroad's trains at a railroad crossing in Mena, Arkansas. The train was en route to Oklahoma from Louisiana. Pittman had driven through a railroad crossing and into the path of the train. Stewart, the

---

[1] The EMJ Parties argue that the Railroad's appeal to this court was not timely because the clock for the appeal began to run once the district court made its declaratory judgment. However, it was not until the district court disposed of the remaining cross-claims that its judgment became final and the appeal period began to run. *Albright v. UNUM Life Ins. Co. of Am.*, 59 F.3d 1089, 1092 (10th Cir. 1995). Therefore, the appeal was timely.

Additionally, while the EMJ Parties ask us to affirm the district court's decision based on Arkansas law, they make an argument in the alternative, that California indemnity law should apply rather than that of Arkansas. However, because we find that the EMJ Parties have no obligation to indemnify the Railroad under Arkansas law, we do not reach this issue.

train's conductor, was injured in the collision. Stewart sued the Railroad under the Federal Employer Liability Act ("FELA"), 45 U.S.C. § 51 et seq. He based his FELA claim on the allegation that the Railroad was negligent in failing to maintain a safe working environment. Stewart also sued the EMJ Parties for negligence under Arkansas state law. The Railroad and EMJ Parties denied liability and, additionally, brought cross claims against each other for their respective property damage resulting from the collision.

The Railroad settled with Stewart. The Railroad then amended its cross-complaint to demand that the EMJ Parties compensate it for the expenditures it made in settling with Stewart based on theories of indemnity or, in the alternative, contribution.[2]

---

[2]      The parties use the terms "contribution" and "subrogation" interchangeably. However, these doctrines are distinct. Under Arkansas law, the law that governs this case, "subrogation is an equitable remedy that rests upon principles of unjust enrichment and attempts to accomplish complete and perfect justice among the parties." *St. Paul Fire & Marine Ins. Co. v. Murray Guard, Inc.,* 37 S.W.3d 180, 183 (Ark. 2001) (citations omitted).

> [T]he elements of subrogation are as follows: 1) a party pays in full a debt or an obligation of another or removes an encumbrance of another, 2) for which the other is primarily liable, 3) although the party is not technically bound to do so, 4) in order to protect his own secondary rights, to fulfill a contractual obligation, or to comply with the request of the original debtor, 5) without acting as a volunteer or an intermeddler.

*Id*. (citations omitted). Based on undisputed facts, the Railroad cannot meet the fourth and fifth prongs of this test: the Railroad entered into settlement as a volunteer and not to protect its secondary rights, to fulfill a contract, or to comply

(continued...)

Subsequently, the EMJ Parties also settled with Stewart. The EMJ Parties' insurance policy, held by Reliance National Indemnity Company ("Reliance"), covered a portion of their settlement with Stewart. The EMJ Parties paid Stewart the uncovered share of the settlement. Apparently, however, Reliance became insolvent before paying Stewart. The California Insurance Guaranty Association ("CIGA"), an entity created by the State of California to pay the claims against insolvent insurers, paid Reliance's portion of the settlement to Stewart. After making this payment, the CIGA had $325,000 of coverage that the EMJ Parties had not used; however, the CIGA apparently refused to cover the Railroad's indemnity and contribution claims.

The EMJ Parties later sought declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201(a). The EMJ Parties argued that the district court should resolve that the Railroad could not seek indemnity from them. The EMJ Parties' rationale was that since the EMJ Parties paid the amount it owed under the Reliance insurance contract, that the Railroad must then look to CIGA, the entity standing in place of the now defunct Reliance, to pay any indemnity claim. The EMJ Parties noted that California law prohibited CIGA from paying any indemnity claim against Reliance. The EMJ Parties reasoned that this

---

[2](...continued)
the EMJ Parties' request. Subrogation is inapplicable to this case. In formulating our decision, we rely on the doctrine of contribution, as did the district court.

prohibition, therefore, shielded the EMJ Parties from the Railroad's indemnity claim.

The Railroad contended that declaratory judgment was improper and that Arkansas law of indemnity allowed the Railroad to pursue its claims against the EMJ Parties. The Railroad argued that despite the CIGA's coverage of a portion of the EMJ Parties' settlement, the California law relied upon by the EMJ Parties was inapplicable to its claims for indemnification in the present action.

On October 23, 2002, the district court entered a declaratory judgment in favor of the EMJ Parties. It did so, however, on grounds other than those the EMJ Parties requested. The court determined that because the accident arose in Arkansas and because the parties agreed that Arkansas law controlled other issues in the case, Arkansas law controlled the issue of indemnity as well. It found that the Railroad and the EMJ Parties were joint tortfeasors, as defined by the Arkansas Uniform Contribution Among Tortfeasors Act, currently codified at Ark. Code Ann. § 16-61-201 *et seq.* Because the parties were joint tortfeasors, the district court determined that the law of indemnity was inapplicable. Additionally, it found that Arkansas law prohibited one joint tortfeasor from recovering contribution from another joint tortfeasor if a settlement terminated the former tortfeasor's liability but not that of the latter, which is what it found happened when the Railroad settled with Stewart prior to the EMJ Parties doing

the same. As a result, the court granted declaratory relief and found that the Railroad was not entitled to recover on its indemnification or contribution claims.

The parties continued to pursue their remaining cross-claims for property damage. On November 14, 2002, however, the district court determined that it did not have jurisdiction over the parties' remaining property damage claims because the damage asserted for the remaining claims fell below the amount required for the court to invoke diversity jurisdiction. The court, therefore, involuntarily dismissed the remaining claims, without prejudice.

The Railroad brings two challenges to the decisions of the district court. First, the Railroad avers that the district court abused its discretion when it considered the EMJ Parties' motion for declaratory judgment. Second, the Railroad argues that the court erred in its determination that the Railroad and the EMJ Parties acted as joint tortfeasors and, thus, that its contribution and indemnity claims could not survive.

We AFFIRM the district court.

## DISCUSSION

### A. Discretion to Consider the EMJ Parties' Motion for Declaratory Relief

The Railroad argues that the district court erred in considering the EMJ Parties' motion for declaratory relief. The Declaratory Judgment Act provides federal courts the discretion to grant declaratory relief. *Kunkel v. Continental*

*Cas. Co.*, 866 F.2d 1269, 1273 (10th Cir. 1989). Provided that the challenge to declaratory relief is not on a jurisdictional basis, "[w]hether to entertain a justiciable declaratory judgment action is a matter committed to the sound discretion of the trial court." *Id*. citing *Alabama State Fed'n of Labor v. McAdory*, 325 U.S. 450, 462 (1945).

In previous cases, this circuit has provided specific guidance regarding how district courts should use the discretion provided by the Declaratory Judgment Act. In considering whether to enter a declaratory judgment, a district court should weigh the following factors:

(1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata"; (4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994) citing *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1063 (6th Cir. 1987). While the district

court must consider these factors, we review the district court's review of these factors only for abuse of discretion. *See id.*

The district court considered these factors. In weighing them, it found that the most important of these were whether declaratory relief would settle the controversy and clarify the legal relations at issue. It found that declaratory judgment would resolve and clarify important issues before the district court. On this basis, it determined that it should use its discretion and consider the EMJ Parties' motion for declaratory relief.

However, it appears that the Railroad's argument is not that the district court failed to weigh these factors or somehow erred in doing so, but rather that it based its declaratory judgment on what the Railroad alleges is a matter of disputed fact. Despite the Railroad's argument to the contrary, its objection is based on the district court's ruling rather than its mere consideration of the EMJ Parties' motion for declaratory relief. We find the district court properly considered the relevant factors and did not err in deciding to consider the EMJ Parties' motion for declaratory relief.

B. Dispute Regarding Whether the Railroad Was a Joint Tortfeasor

When considering a motion seeking declaratory relief at the summary judgment stage, which was the case here, a district court's role is not to make

factual findings but to determine whether any material factual dispute exists.[3] "We review the district court's grant of summary judgment *de novo*, applying the same legal standard used by the district court." *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). We must determine whether in viewing the record in the light most favorable to the non-moving party, there exists any genuine issue of material fact. *Id.*; *Wolf v. Prudential Ins. Co. of America*, 50 F.3d 793, 796 (10th Cir. 1995).

The Railroad argues that it was inappropriate for the district court to rely on the finding that the Railroad and the EMJ Parties were joint tortfeasors. The Uniform Contribution Among Tortfeasors Act defines "joint tortfeasors" to mean "two (2) or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." Ark. Stat. Ann. § 16-61-201. The nub of the Railroad's argument is that the district court's factual finding that the Railroad was jointly negligent with the EMJ Parties is disputed because the Railroad contends it was free of any negligence. On this basis, it asserts that the resolution of this disputed claim should have properly been reserved for a finder of fact.

---

[3] The district court was not explicit as to whether its judgment was based on the facts alleged in the Railroad's complaint or on undisputed facts. However, because it is clear that the district court relied on facts outside of the Railroad's amended complaint, the district court necessarily relied on undisputed facts or, as the Railroad alleges, erred in relying on disputed allegations.

In weighing the Railroad's argument, we begin with the proposition that only facts necessarily relied upon in making a judgment as a matter of law need to be undisputed. *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002). Therefore, we turn to the question of whether the finding that the Railroad was a joint tortfeasor is material to the determination that the Railroad was barred from seeking indemnity and contribution from the EMJ Parties.

Under Arkansas law, indemnity and contribution are mutually exclusive remedies. Contribution acts to equitably distribute the loss among joint tortfeasors according to their relative degree of fault. *Boatmen's Nat. Bank of Arkansas v. Cole,* 947 S.W.2d 362, 366 (Ark. 1997). In the absence of contractual provisions, indemnity is an equitable remedy that shifts the entire loss from one party to a tortfeasor who should rightfully bear it in its entirety. *Mosley Machinery Co., Inc. v. Gray Supply Co.*, 833 S.W.2d 772, 775 (Ark. 1992).

### 1. Contribution

Under Arkansas law, contribution in tort is dependent on a finding that the party seeking contribution and the party from which contribution is sought are joint tortfeasors. *Scalf v. Payne*, 583 S.W.2d 51, 53 (Ark. 1979). If parties do not have a potential liability as joint tortfeasors, no right of contribution exists. *Id.* Additionally, "[a] joint tortfeasor who enters into a settlement with [an]

- 11 -

injured person is not entitled to recover contribution from another joint tortfeasor whose liability to the injured person is not extinguished by the settlement." Ark. Code Ann. § 16-61-202(3).

The district court found that the Railroad's right to contribution was extinguished because it settled with Stewart prior to Stewart settling with the EMJ Parties. The Railroad does not dispute this. Nevertheless, it asserts that it was not a joint tortfeasor. However, if the Railroad was not a joint tortfeasor, as it contends, it would have no right to contribution under Arkansas law. The only hope that the Railroad had to recover under a theory of contribution hinges on the determination that it was a joint tortfeasor. Thus, the district court did not need to rely on the determination that the Railroad was a joint tortfeasor in finding that it had no right to contribution: if the Railroad was not a joint tortfeasor, it had no right to seek contribution. Regardless of whether the Railroad was a joint tortfeasor, judgment against the Railroad's contribution claim was proper.

2. Indemnity

The Railroad argues that the district court erred in looking to contribution law rather than to that of indemnity. The significance of the Railroad's argument is that unlike contribution law, under indemnity law, there is no procedural requirement that would bar the Railroad from pursuing its claim simply because it settled with Stewart prior to the EMJ Parties doing the same.

Under Arkansas law, "the right to indemnity, where one of the parties is not liable to the injured party for a joint wrong, must be based upon a relationship other than that of joint tortfeasors." *Larson Mach., Inc. v. Wallace*, 600 S.W.2d 1, 13 (Ark. 1980); *Welter v. Curry,* 539 S.W.2d 264, 272 (Ark. 1976); *Jack Morgan Construction Co. v. Larkan*, 496 S.W.2d 431 (Ark. 1973). However, only a person who was compelled to pay another party due to a legal obligation is eligible to seek indemnification. *Jean-Pierre v. Plantation Homes of Crittenden County, Inc.,* 89 S.W.3d 337, 341 (Ark. 2002).

Assuming that the Railroad sought indemnification from the EMJ Parties under the theory that the Railroad and the EMJ Parties were joint tortfeasors, Arkansas law would not permit it. As discussed above, the relationship between the Railroad and the EMJ Parties must be based on a relationship other than that of joint tortfeasors to allow the Railroad to seek indemnification. *Larson Mach., Inc.*, *supra*; *Welter*, *supra*; *Jack Morgan Construction Co.*, *supra.*

The Railroad argues that it was not negligent and that the EMJ Parties are the sole tortfeasors. This argues for the finding of an alternative relationship, namely that of victim (i.e., the Railroad) and tortfeasors (i.e., the EMJ Parties). Even if this alternative relationship were assumed to be the case, the question remains, however, whether its settlement with Stewart was compelled by a legal obligation or whether the Railroad settled as a mere volunteer. Stewart's claim

- 13 -

against the Railroad was that the Railroad violated FELA by negligently failing to provide him a safe workplace. The Railroad could have legally resisted this claim; it had no unescapable liability to pay Stewart's FELA claim. The Railroad did not pay Stewart as a result of a judgment or due any legal compulsion, but rather it voluntarily entered into settlement. Whether or not the Railroad was a joint tortfeasor, it was not eligible to seek indemnification because it voluntarily settled rather than being compelled to pay Stewart due to a legal obligation. *Jean-Pierre*, *supra*.

## CONCLUSION

We AFFIRM the judgment of the district court granting declaratory relief to the EMJ Parties as to the Railroad's contribution and indemnity claims. The district court correctly applied Arkansas law and found that when the Railroad voluntarily settled with Stewart prior to the EMJ Parties doing the same, the Railroad extinguished any possibility it had to recover contribution or indemnity from the EMJ Parties. The Railroad's assertion that it was not a joint tortfeasor is irrelevant because it does not raise a material fact as to the determination to grant judgment against the Railroad's indemnity and contribution claims.

Entered for the Court

Ted Stewart
District Judge

- 14 -