2009 Ark. 205
**John P. PARKMAN, Appellant,**

v.

**SEX OFFENDER SCREENING AND RISK ASSESSMENT COMMITTEE, Appellee.**

No. 08–1165.

Supreme Court of Arkansas.

April 16, 2009.

Jeff Rosenzweig, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: Amy L. Ford, Ass't Att'y Gen., Little Rock, for appellee.

PAUL E. DANIELSON, Justice.

Pursuant to the Administrative Procedure Act (APA), appellant John P. Parkman appeals from the order of the circuit court dismissing his appeal from appellee Sex Offender Screening and Risk Assessment Committee's administrative review, in which the Committee upheld his assessment as a level four sex offender.[1] He asserts three points on appeal: (1) that he was unconstitutionally denied a hearing before the Committee; (2) that he was unconstitutionally penalized for candor about his sexual past while under forced immunity; and (3) that there was noncompliance with the statutory and regulatory requirements regarding a level four, sexually violent predator assessment. We affirm.

The record in this case reflects that on November 15, 2006, the Committee notified Parkman of his assessment as a level four sex offender.[2] Shortly thereafter, Parkman timely requested administrative review of the Committee's assessment, requesting copies of certain items in the Committee's possession, and demanding the right to appear before the Committee. On November 28, 2006, the Committee provided certain items requested and offered dates upon which Parkman's counsel could review the Committee's file.

On January 8, 2007, Parkman amended and supplemented his prior request for administrative review, asserting, among other matters, the issues raised in the instant appeal. On January 16, 2007, the Committee denied Parkman's request and found that its level four determination was consistent with information contained within Mr. Parkman's file. Mr. Parkman was both interviewed and diagnosed with a sexual paraphilia by Dr. Whiteside. Additionally, The Sex Offender Assessment Committee was unanimous in its determination of the reported Risk Level.

The Committee notified Parkman of his right to apply for reassessment in five years and further notified Parkman of his right to judicial review of its decision, pursuant to the APA.

Parkman subsequently filed a complaint and petition for review under the APA in the circuit court. The Committee answered and later moved to have the matter remanded to it, such that it could enter a final order and make specific findings of fact and conclusions of law in accord with *Munson v. Arkansas Department of Correction Sex Offender Screening & Risk Assessment*, 369 Ark. 290, 253 S.W.3d 901 (2007). The circuit court granted the motion and remanded the matter to the Committee "for entry of a final order."

On December 11, 2007, the Committee issued its findings of fact, conclusions of law, and final community notification level, in which it upheld Parkman's risk level of four. It subsequently filed a supplemental record with the circuit court, and briefs by both the Committee and Parkman were filed. On July 2, 2008, a hearing was held, and the circuit court subsequently entered its order, wherein it found:

[T]he court finds that there is substantial evidence to support the action of the administrative agency and that the administrative actions did not violate

1. The APA is codified at Arkansas Code Annotated §§ 25–15–201–25–15–218 (Repl.2002 & Supp.2007).

2. A thorough and detailed review of the assessment process as provided for in the Sex

Offender Registration Act can be found in *Burchette v. Sex Offender Screening & Risk Assessment Committee*, 374 Ark. 467, 288 S.W.3d 614 (2008).

petitioner's constitutional rights. The *Complaint and Petition for Review* is accordingly denied, the administrative decision is affirmed, and this matter is dismissed with prejudice.

Parkman now appeals.

## I. Denial of a Hearing

Acknowledging this court's decision on this issue in *Burchette v. Sex Offender Screening & Risk Assessment Committee*, 374 Ark. 467, 288 S.W.3d 614 (2008), Parkman argues that he was unconstitutionally denied a hearing before the Committee. Parkman urges this court to overrule *Burchette* and to remand the matter to the Committee for a hearing. The Committee responds that because this court has previously held that a sex offender is not entitled to any additional face-to-face hearing before the Committee during the administrative-review process, and because Parkman offers no new arguments on the issue, the *Burchette* decision controls this issue.

In considering any constitutional challenge to a statute, this court begins with the axiom that every act carries a strong presumption of constitutionality. *See Arkansas Dep't of Correction v. Bailey*, 368 Ark. 518, 247 S.W.3d 851 (2007). This presumption places the burden of proof on the party challenging the legislation to prove its unconstitutionality, and any doubts about the statute will be resolved in favor of the statute's constitutionality, if it is possible to do so. *See id.* Because statutes are presumed to be framed in accordance with the Constitution, they should not be held invalid for repugnance thereto unless such conflict is clear and unmistakable. *See id.*

As an initial matter, Parkman urges this court to overrule our recent decision in *Burchette, supra.* In the absence of a compelling reason to do so, we decline to do so. We have held that:

[i]t is necessary, as a matter of public policy, to uphold prior decisions unless great injury or injustice would result. The policy behind stare decisis is to lend predictability and stability to the law. In matters of practice, adherence by a court to its own decisions is necessary and proper for the regularity and uniformity of practice, and that litigants may know with certainty the rules by which they must be governed in the conducting of their cases. Precedent governs until it gives a result so patently wrong, so manifestly unjust, that a break becomes unavoidable.

*Cochran v. Bentley*, 369 Ark. 159, 174, 251 S.W.3d 253, 265 (2007) (internal citations omitted).

Here, Parkman maintains that he could have established the following, had a hearing during the Committee's administrative review been held:

In addition to explaining to the Committee, *under oath*, that he has learned from his mistakes and has not committed any sexual transgression in many years, he would have established—through his testimony and other evidence—that he has suffered a disabling stroke and will have extremely limited mobility and physical ability.[3]

In *Burchette, supra*, Burchette similarly argued, based on due-process considerations, that he was entitled to a hearing before the Committee before it could affirm its initial assessment of him. Making many of the same arguments and relying on some of the same case law as Parkman,

---

3. Before the circuit court, Parkman proffered a letter from his physician, dated June 27, 2008, which stated that he had suffered a stroke on January 15, 2007.

Burchette appeared to want "to give his unsworn version of events, relating to the accusations for which he did not plead and was not charged, in person to [the Committee] so that [the Committee could] assess his credibility face-to-face." 374 Ark. at 473, 288 S.W.3d at 619.

This court rejected Burchette's arguments, observing that Burchette had an in-person opportunity to give his version of the events during his assessment interview and that he had a meaningful opportunity to be heard on the matter in his interview. We held that Burchette had a meaningful opportunity to be heard under the facts of the case because of the procedure, which included a face-to-face risk-assessment interview and the Committee review, and, therefore, his procedural due-process rights were not violated by denying him a second face-to-face interview before the Committee.

As in *Burchette,* a review of the instant record reveals that Parkman, too, was interviewed during the assessment process on January 11, 2006, and was given the opportunity to provide his version of the offenses of which he was accused. Indeed, the record further reflects that Parkman was given a supplemental interview on October 3, 2006. Accordingly, because Parkman was given a meaningful opportunity to be heard during the assessment, he was not unconstitutionally denied a hearing before the Committee.

While Parkman avers that had a hearing been held he would have been able to present evidence regarding his stroke that occurred on January 15, 2007, that argument is of no moment. Arkansas Code Annotated § 12–12–922(b)(3) (Sp. Supp. 2006), provides:

(3)(A) The basis of the request for administrative review shall be clearly stated and any documentary evidence attached.

(B) The basis for administrative review is:

(i) The rules and procedures were not properly followed in reaching a decision on the risk level of the sex offender;

(ii) Documents or information not available at the time of assessment have a bearing on the risk that the sex offender poses to the community; or

(iii) The assessment is not supported by substantial evidence.

While the information regarding Parkman's stroke might arguably fall within subsection (3)(B)(ii), a review of the record reveals that it was not included in either Parkman's initial request for administrative review, dated November 21, 2006, nor his supplemental request, dated January 8, 2007. Obviously, information regarding the stroke of January 15, 2007, could not have been included where Parkman's stroke occurred after the requests for administrative review were made. Nonetheless, the Committee could not review information that was not placed before it. Because Parkman failed to raise this argument to the Committee in either his request for administrative review or his amended request for administrative review, we are precluded from considering it on appeal.[4] *See Franklin v. Arkansas Dep't of Human Servs.,* 319 Ark. 468, 892 S.W.2d 262 (1995).

---

4. Following the circuit court's order of remand, Parkman did request a hearing to offer evidence regarding his stroke. However, the remand did not offer Parkman an opportunity to present additional evidence; to the con-

trary, the matter was remanded solely for the Committee to enter findings of fact and conclusions of law to support its original administrative decision upholding Parkman's assessment level.

## II. Cooperating with Assessment Procedure

Parkman argues as his second point on appeal that he was unconstitutionally penalized for cooperating with the assessment procedure. He contends that the use of statements he made during the assessment process, under a grant of immunity, to assess him as a level four offender, violated his federal and state rights against self-incrimination. Parkman further avers that, because his convictions occurred before the effective date of the Sex Offender Registration Act (SORA), the punishment of assessing him as a level four offender and the restrictions resulting therefrom violated the ex post facto prohibitions of Article I, § 10 of the U.S. Constitution and Article 2, § 17 of the Arkansas Constitution.

The Committee counters that offenders going through the assessment process are provided with "use immunity," in that any statements made during assessment cannot be ₁₈used against the offender in a criminal prosecution of past acts. It further contends that the assessment process is not criminal in nature and that residency requirements, public website notification, limitations on volunteer work, and limitations on the entrance to school campuses are not punishment; instead, it claims, they are regulatory and nonpunitive actions for the public's protection. Because such requirements are not punishment, the Committee avers, they cannot be considered violative of the right against self-incrimination or of ex post facto.

### A. Self-Incrimination

The Fifth Amendment right against self-incrimination, "which applies to the States through the Fourteenth Amendment, provides that no person 'shall be compelled in any criminal case to be a witness against himself.' " *Allen v. Illinois,* 478 U.S. 364, 368, 106 S.Ct. 2988, 92 L.Ed.2d 296 (1986) (internal citation omitted). The Self–Incrimination Clause, therefore, "is expressly limited to 'any criminal case.' " *United States v. Ward,* 448 U.S. 242, 248, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980) (quoting U.S. Const. amend. V). One's Fifth Amendment right may only be violated where one's own statements are used against one in a proceeding criminal in nature. *See, e.g., Edwards v. Stills,* 335 Ark. 470, 984 S.W.2d 366 (1998). Here, Parkman urges that a level four assessment constitutes punishment due to the fact that certain restrictions are placed upon him as a result of being classified at that level. He contends that because a level four assessment is punishment, the use of any of his statements to classify him as a level four ₁₉offender violates his right against self-incrimination. Parkman's argument is without merit, however, as this court has previously held that the SORA is civil in nature.

In *Kellar v. Fayetteville Police Department,* 339 Ark. 274, 5 S.W.3d 402 (1999), this court examined the effects of the SORA to "see whether it 'transform[s] what was clearly intended as a civil remedy into a criminal penalty.' " 339 Ark. at 282, 5 S.W.3d at 407 (quoting *Hudson v. United States,* 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997)). To make its determination, this court looked to the factors set forth in *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), which had been used previously by multiple courts.[5] We then

---

**5.** Those factors include: (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the

concluded that "[g]iven the overall balance of the *Kennedy* factors, we are left with the conclusion that, while there may be some punitive characteristics inherent in the registration and notification statute, the Act is essentially regulatory and therefore non-punitive in nature." *Id.* at 287, 5 S.W.3d at 410.

Notwithstanding our holding in *Kellar*, Parkman asserts that certain requirements for level four offenders render the assessment procedure and his assessment as a level four offender punishment, or criminal. Specifically, Parkman points to several statutes within ₁₀our criminal code and one statute within the SORA, which he perceives as restrictions that render a level four assessment punishment and a deprivation of his liberties: (1) Ark.Code Ann. § 5–14–128(a) (Supp.2007), which renders it unlawful for a sex offender required to register under the SORA, and who has been assessed as a level three or level four offender, from residing within 2000 feet of any public or private elementary or secondary school, public park, youth center, or daycare facility; (2) Ark. Code Ann. § 5–14–129(a) (Repl.2006), which renders it unlawful for a sex offender required to register under the SORA, and who has been assessed as a level three or level four offender, to engage in an occupation or participate in a volunteer position that requires the sex offender to work or interact primarily or directly with a child under sixteen years of age; (3) Ark.Code Ann. § 5–14–131(b)(1) (Supp. 2007), which renders it unlawful for a person who is required to register under the SORA, and who has been assessed as a level three or level four offender, to knowingly reside within 2000 feet of the residence of his or her victim; (4) Ark.Code Ann. § 5–14–132(b) (Supp.2007), which renders it unlawful for a person who is required to register under the SORA, and who has been assessed as a level three or level four offender, to knowingly enter upon the campus of a public school; and (5) Ark.Code Ann. § 12–12–913(j)(1)(A) (Supp.2007), which sets forth the information that shall be made public concerning a registered sex offender who is classified as a level three or level four offender. Claiming that these restrictions render assessment as a level four offender criminal in nature, ₁₁Parkman urges that his right to self-incrimination was violated when he was forced to provide statements during the assessment process that were used to calculate his classification.

Parkman's argument regarding the four criminal statutes cited is misplaced. We have already held that the SORA is not criminal in nature, including its assessment process. Parkman's ultimate claim is that his classification as a level four offender is punitive or criminal in nature; he merely argues this is so because he may become subject to certain criminal statutes by virtue of his classification. That may be true, but, still, the assessment process, as part of the SORA, is not criminal in nature. As this court has already determined, the requirements of the SORA, including assessment, are not criminal in nature, and Parkman's assertion to the contrary is without merit. Because, under *Kellar*, the assessment and ultimate classification of a sex offender pursuant to the SORA are not criminal in nature, Parkman's statements made during the assessment process were not subject to protection by the Self–Incrimination Clause

traditional aims of punishment-retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned. *See Kennedy v. Mendoza–Martinez, supra.*

by virtue of the criminal statutes relied on by Parkman.[6]

■■ Nor does the effect of Ark.Code Ann. § 12–12–913(j)(1)(A) render the SORA criminal in nature, as claimed by Parkman. In 2003, the General Assembly amended that section, setting forth specific information regarding a level three or level four sex offender that shall be public. *See* Act 330 of 2003, § 2. Section 12–12–913(j)(1)(A) currently provides that

> [t]he following information concerning a registered sex offender who is classified as a level 3 or level 4 offender by the Sex Offender Screening and Risk Assessment shall be made public:
>
> (i) The sex offender's complete name, as well as any alias;
>
> (ii) The sex offender's date of birth;
>
> (iii) Any sex offense to which the sex offender has pleaded guilty or nolo contendere or of which the sex offender has been found guilty by a court of competent jurisdiction;
>
> (iv) The street name and block number, county, city, and zip code where the sex offender resides;

> (v) The sex offender's race and gender;
>
> (vi) The date of the last address verification of the sex offender provided to the Arkansas Crime Information Center;
>
> (vii) The most recent photograph of the sex offender that has been submitted to the center; and
>
> (viii) The sex offender's parole or probation office.

Ark.Code Ann. § 12–12–913(j)(1)(A) (Supp.2007). We cannot say that this effect of the Act transforms what we have already found civil in nature to criminal or punitive.

When enacted in 1997,[7] the SORA provided for the disclosure of "relevant and necessary information regarding sex offenders to the public when the disclosure of such information is necessary for public protection." Ark.Code Ann. § 12–12–913(b)(1) (Supp.1997). At that time, the General Assembly directed and authorized the Child Abuse/Rape/Domestic Violence Commission[8] to promulgate "guidelines

---

**6.** The Self–Incrimination Clause of the U.S. Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself[,]" *see* U.S. Const. amend. V, and the Arkansas Constitution provides that "nor shall any person be compelled, in any criminal case, to be a witness against himself[.]" Ark. Const. art. 2, § 8. Because the language of the federal and state constitutions are virtually identical, and because this court has not been provided any reason why it should interpret the provisions differently, there is no reason for this court to construe our constitution other than in the same way as the federal constitution. *See, e.g., Kellar v. Fayetteville Police Dep't, supra* (observing that being given no reason to interpret the state's ex post facto provision in a manner contrary to the federal ex post facto provision, the court would look to federal as well as state law for guidance); *Williams v. State*, 325 Ark. 432, 930 S.W.2d 297 (1996) (holding that because Arkansas's ex post facto

clause was essentially identical to its federal counterpart, the same reasoning applied to both); *Wilson v. City of Pine Bluff*, 278 Ark. 65, 643 S.W.2d 569 (1982) (observing that when the language of the federal and state constitution is identical, as in the instance of the confrontation clause, the due-process clause, and several others, there is no reason to construe our constitution other than in the same way as the federal constitution has been construed).

**7.** When enacted, what is now known as the SORA was entitled the "Sex and Child Offender Registration Act of 1997." *See* Act 989 of 1997, § 1.

**8.** In 1999, the General Assembly amended the statute substituting "Sex Offenders Assessment Committee" for "Child Abuse/Rape/Domestic Violence Commission." *See* Act 1353 of 1999, § 8.

and procedures for the disclosure of relevant and necessary information regarding sex offenders to the public when the release of the information is necessary for public protection." Ark.Code Ann. § 12–12–913(c)(1). The guidelines and procedures promulgated were to

> identify factors relevant to an offender's future dangerousness and likelihood of reoffense or threat to the community. The guidelines and procedures shall also address the extent of the information to be disclosed and the scope of the community to whom the disclosure shall be made as these factors relate to the level of the offender's dangerousness, the offender's pattern of offending behavior, and to the need of community members for information to enhance their individual and collective safety.

Ark.Code Ann. § 12–12–913(c)(2) (Supp. 1997). In *Kellar*, this court examined the then three-tiered structure of the registration and notification rules for sex offenders. In doing so, the court described the system then in place, observing that the risk level assessment determined the type of information and amount of community notification released regarding a particular offender:

> For a Level I offender, only the offender, adult members of the offender's household, and local law enforcement agencies receive the information contained in the offender's fact sheet, which contains such data as the offender's assigned risk level; the name (and any aliases), birth date, social security number, and physical description of the offender; a recent photograph; and a description of the offense for which the offender was convicted, among other things. A Level II offender will be subject to the same scope of notification, but could also, at the discretion of local law enforcement, have the information subject to dissemination to any establishments and organizations that primarily serve individuals likely to be victimized by the offender. For a Level III offender, it is mandatory that notification be given to all of the above; in addition, subject to the discretion of law enforcement authorities, the same information may be released to any other members of the community the offender is likely to encounter. At this level, the community notification is *essentially unlimited*.

> In deciding whether or not to exercise their discretion in releasing this information to the public, law enforcement authorities may consider the offender's prior history, offense characteristics, employment, recreational, social or religious interests and the characteristics of likely victims.

339 Ark. at 286–87, 5 S.W.3d at 409–10 (emphasis added). We then held that those provisions strongly indicated that the SORA was tailored to address specific governmental interests and was not excessive in relation to its stated nonpunitive purpose. *See id.*

A comparison of the current statute's notification rules for level three and level four offenders with the notification rules at issue in *Kellar* reveals that the information to be disseminated under both statutes is substantially similar. Just as such rules did not render the 1997 SORA punitive, the substantially similar, current provisions do not now render the SORA punitive. Accordingly, because the assessment process is civil in nature, Parkman's statements made therein may be used to calculate his assessment level, and Parkman's self-incrimination claim fails.

*B. Ex Post Facto*

■ Parkman further argues that because his convictions occurred before the

effective date of the registration act, any punishment, such as assessing him as a level four offender, violated the federal and state ex post facto prohibitions. However, in *Kellar*, this court rejected this precise argument. There, Kellar argued that the retroactive application of the SORA to his earlier convictions violated the federal and state ex post facto clauses. As already stated, this court explicitly held that "because [the Act] is not a form of punishment, it therefore cannot be considered a violation of the *ex post facto* clauses of the United States and Arkansas Constitutions." 339 Ark. at 287, 5 S.W.3d at 410.

Again notwithstanding our decision in *Kellar*, Parkman attempts to enhance his ex post facto argument, citing this court to the same criminal statutes he relies upon in his argument that his self-incrimination rights were violated, as well as Act 1743 of 2001, which amended Ark.Code Ann. § 12–12–904(a)(1). He asserts that the enaction of these subsequent statutes, which he describes as imposing criminal sanctions on a level four offender, supersedes any prior civil nature of the Act and gives a level four assessment a prohibited ex post facto effect.

Our analysis of Parkman's ex post facto claim based upon the criminal statutes cited is the same as already set forth regarding his self-incrimination claim. Parkman was assessed by the Committee to be a level four offender, which he claims to be punishment. The SORA provides for assessment, and this court has explicitly held that the SORA is not punitive, but civil in nature. Merely because Parkman may become subject to additional criminal statutes by virtue of his status as a level four offender does not render the assessment process or his assessment level punishment, as that determination is clearly civil in nature. Accordingly, Parkman's ex post facto claim based on the cited criminal statutes must fail.

Nor is Parkman's argument regarding Act 1743 of 2001 meritorious. In Act 1743, the General Assembly made numerous amendments to the SORA, which already set forth criminal sanctions for a sex offender's failure to register or failure to report a change of address.[9] Specifically, section 3 of that Act amended Ark.Code Ann. § 12–12–904(a)(1) to provide:

> (a)(1) A person who fails to register or who fails to report changes of address, *employment, education, or training, or who refuses to cooperate with the assessment process* as required under this subchapter shall be guilty of a Class D felony.

Act 1743 of 2001, § 3.[10]

While the amendment did make criminal the failure to cooperate with the assessment process, we simply cannot say that this effect of the Act "transform[s] what was clearly intended as a civil remedy into a criminal penalty." *Kellar*, 339 Ark. at 282, 5 S.W.3d at 407 (quoting *Hudson*, 522 U.S. at 99, 118 S.Ct. 488). It is our opinion that the SORA, as amended by Act 1743 of 2001, § 3, remained regulatory, or civil in nature, despite any possible punitive characteristic of the amendment. Accordingly, the Act, as amended, cannot be an ex post facto law, and Parkman's argument regarding the amendment fails. *See,*

---

9. Our *Kellar* decision established that neither the failure to register nor the failure to report a change of address, both of which were punishable as a Class D felony when the SORA was enacted, *see* Act 989 of 1997, § 11, and both of which were a part of the Act when it was reviewed by this court in *Kellar*, were effects that rendered the SORA punitive, or criminal in nature.

10. The current statute provides that such failures constitute a Class C felony. *See* Ark. Code Ann. § 12–12–904(a)(1)(A) (Supp.2007).

e.g., *Kellar v. Fayetteville Police Dep't,* *supra* (citing *Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981); *United States v. Ward,* 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980)).

In sum, Parkman does not contend that the criminal statutes upon which he relies are punitive, or criminal, in nature and, therefore, render the rights against self-incrimination and ex post facto applicable to the assessment process. *Cf. Weems v. Little Rock Police Dep't,* 453 F.3d 1010 (8th Cir.2006) (rejecting appellants' argument that the residency restriction set forth in Ark.Code Ann. § 5–14–128(a) was an unconstitutional ex post facto law, as it was not so punitive in effect as to negate the General Assembly's intent ⌊₁₈to create a civil, nonpunitive regulatory scheme when it enacted the residency restriction). Instead, his arguments regarding those two rights are premised on his assertion that his classification as a level four offender is rendered punitive by virtue of those statutes. Because the assessment process and the resulting assessment level are part and parcel of the SORA, and because this court has previously examined the effects of the SORA and determined that it is nonpunitive, or civil, in nature, neither right precludes the use of Parkman's statements in the assessment process and any resulting assessment level.

### III. Compliance with Statutory and Regulatory Requirements

For his final point on appeal, Parkman argues that his assessment as a level four offender should be invalidated because his assessment was not supported by substantial evidence, certain statutory requirements were not followed, and the assessment was arbitrary and capricious. The Committee responds that the record clearly reflects that the statutory requirements for assessing a sexually violent predator were satisfied.

Before addressing the merits of Parkman's argument, we note that judicial review of the findings by the Committee is governed by the APA. *See* Ark.Code Ann. § 12–12–922(b)(7)(A)(ii). In such cases, the appellate court's review is directed, not toward the circuit court, but toward the decision of the agency, because administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than courts, to determine and analyze legal issues affecting their agencies. See *Collie v.* ⌊₁₉*Arkansas State Med. Bd.,* 370 Ark. 180, 258 S.W.3d 367 (2007). Our review of administrative decisions is limited in scope. *See id.* When reviewing such decisions, we uphold them if they are supported by substantial evidence and are not arbitrary, capricious, or characterized by an abuse of discretion. *See id.*

With respect to the Committee's alleged failure to comply with the statutory and regulatory criteria, Parkman points to five specific ways in which he contends the Committee's findings failed to comply with the pertinent criteria: (1) there was no finding of a mental abnormality or personality disorder, which he claims is required under Ark.Code Ann. § 12–12–903(15);[11] (2) he was examined by a psychological examiner and not a psychologist or psychiatrist, as he claims is required by Ark. Code Ann. § 12–12–922(a)(2)(B); (3) there

11. Here, Parkman's requests for administrative review before the Committee were dated November 21, 2006, and January 8, 2007. While the final findings of fact and conclusions of law were made by the Committee on December 11, 2007, Parkman preserved his arguments for appeal within his requests for administrative review. Because those arguments would have been premised upon the 2006 versions of the pertinent statutes and regulations, we will use the versions in effect in 2006 to analyze Parkman's claims.

was no finding of compliance, which he claims is required under Ark.Code Ann. § 12–12–922(a)(2)(C); (4) there was no indication in the findings that the Committee determined by a majority vote whether Parkman met the criteria for a sexually violent predator; and (5) certain subjective impressions of Parkman's actions and affect, which he claims served to "override Parkman from the tests which showed him to be a low or moderate risk offender," were not made in the findings, nor was it clear that they were relied upon by the Committee. None of Parkman's assertions have merit.

### A. Ark.Code Ann. § 12–12–903(15)

In this point on appeal, Parkman initially asserts that Ark.Code Ann. § 12–12–903(15) (Sp. Supp. 2003–04) required the Committee to make within its findings a finding that Parkman suffered from a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses.[12] Section 12–12–903(15) defines the term "sexually violent predator," providing:

> "Sexually violent predator" means a person who has been adjudicated guilty or acquitted on the grounds of mental disease or defect of a sexually violent offense and who suffers from a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses.

In construing a statute, it is our duty to construe it just as it reads, giving the words their plain and ordinary meanings. *See Arkansas Dep't of Envtl. Quality v. Brighton Corp.*, 352 Ark. 396, 102 S.W.3d 458 (2003). Here, the statute relied upon by Parkman merely defines the term "sexually violent predator." It con-

tains no express language requiring an explicit finding by the Committee, and the Committee's findings were not invalid for failing to include such a finding. For this reason, Parkman's assertion of error is without merit.

### B. Ark.Code Ann. § 12–12–922(a)(2)(B)

Parkman next asserts that the Committee's findings were invalid because his examination was performed by a psychological examiner and not a psychologist or psychiatrist, which he asserts is required by Ark.Code Ann. § 12–12–922(a)(2)(B) (Sp. Supp. 2006). Section 12–12–922(a)(2)(B) requires:

> (B) If a mental abnormality or personality disorder is suspected, a licensed psychologist or psychiatrist qualified by the committee shall conduct *further* assessment to determine the presence or absence of a mental abnormality or personality disorder.

(Emphasis added.)

A review of Parkman's assessment records reveals that his Risk Assessment and Offender Profile Report, dated October 30, 2006, was prepared by "C.E. Buddy Rawls, M.R.C." While Parkman claims in his brief that Rawls is a psychological examiner, not a psychologist or psychiatrist, the report indicates that it was "reviewed, edited, and approved by" "Dean Whiteside, Ed. D." Moreover, the record reveals that Dr. Whiteside conducted a supplemental interview of Parkman on October 3, 2006, prior to the date of the report, and concluded that Parkman's "history is consistent with a rape paraphilia, and designation as Sexually Violent Predator."

Parkman's argument fails. The plain language of section 12–12–922(a)(2)(B) re-

---

12. In his requests for review by the Committee, Parkman argued that this section *and* Ark.Code Ann. § 12–12–922 (Sp. Supp. 2006)

required such a finding. However, Parkman's argument to this court is based solely on the section discussed.

quires only that where a mental abnormality or personality disorder is suspected, *further* assessment by a licensed psychologist or psychiatrist shall be conducted. It in no way requires that the entire assessment shall be conducted by a licensed psychologist or psychiatrist; indeed, the preceding subsection, section 12–12–922(a)(2)(A) speaks in terms of what precipitates the ⌐₂₂*further* examination:

> (2)(A) Examiners qualified by the Sex Offender Assessment Committee shall include in the assessment of any sex offender convicted of a sex offense a review as to whether the frequency, repetition over time, severity of trauma to the victim, or established pattern of predatory behaviors suggests that the sex offender suffers from a mental abnormality or personality disorder that makes the sex offender likely to engage in future predatory sexual offenses.

Because our review of the assessment reveals that it complied with section 12–12–922(a)(2)(B), we find no error.

### C. Ark.Code Ann. § 12–12–922(a)(2)(C)

Parkman next asserts that the Committee's findings lack any finding of compliance with Ark.Code Ann. § 12–12–922(a)(2)(C), which provides:

> (C) The report of the assessment shall be presented to the committee, which shall make the determination of a mental abnormality or personality disorder according to protocols established by the committee and published in the committee guidelines.

Here, Parkman's Risk Assessment and Offender Profile Report specifically states that "[o]n October 30, 2006 the Sex Offend-er Assessment Committee reviewed this case file and voted to assess this offender at Level 4 to permit the broadest and most visible means of community notification." Pursuant to the *Sex Offender Guidelines and Procedures* (Revised Jun. 2004), a risk level of four indicates a sexually violent predator. *See Sex Offender Guidelines and Procedures*, Overview. These same guidelines provide that

> Sexually Violent Predator means a person who has been adjudicated guilty, ⌐₂₃or acquitted on the grounds of mental disease or defect of a sexually violent offense, or is convicted of [a] second or subsequent sexual offense and who suffers from a mental abnormality or personality disorder that makes the person likely to engage in future predatory sexually violent offenses.

*See id.* Because the Committee determined the presence of a mental abnormality or personality disorder by virtue of its review and assessment of Parkman as a level four offender, it is clear to us that the Committee complied with the provisions of section 12–12–922(a)(2)(C).[13]

### D. Majority Vote

▮▮▮▮▮ Without any citation to the regulation upon which he premises his argument, Parkman next contends that the Committee's findings failed to indicate whether Parkman met the criteria for a sexually violent predator "by a majority vote." Not only has Parkman failed to cite this court to the authority on which he relies, it is not otherwise evident from our review of the record that this argument was even raised to the Committee. A review of Parkman's request for administrative review, dated November 21, 2006,

---

**13.** While Parkman appears to argue that the Committee was required to make this finding in its findings of fact and conclusions of law upon administrative review, that is not what the statute requires. Subsection (a)'s plain language applies to the initial assessment and assignment of risk level, not its findings upon administrative review, pursuant to subsection (b), if review is sought by the sex offender. *See* Ark.Code Ann. § 12–12–922(a–b).

and his amended and supplemental request, dated January 8, 2007, reveals no argument regarding the alleged regulation requiring a majority vote. It is essential to judicial review under the APA that issues must be raised before the administrative agency appealed from or they will not be addressed by this court. *See City of Benton v. Arkansas Soil & Water Conservation Comm'n*, 345 Ark. 249, 45 S.W.3d 805 (2001). Because Parkman failed to raise this argument to the Committee, we will not address it.

### E.  Subjective Impressions

For his final argument, while somewhat unclear, Parkman appears to challenge the fact that certain impressions, he claims to be improper and subjective, were used in calculating his assessment level. He claims that these impressions were used to assess him at a higher level, rather than as a low- or moderate-risk offender. At the same time, Parkman admits that "it is unclear whether [these observations] were relied on by the Committee because there is no indication from the Findings that the Committee, as opposed to one member thereof, ever looked at it in the 2007 adjudication."

Admittedly, we are somewhat perplexed by Parkman's argument due to its lack of clarity. However, to the extent that Parkman's argument can be taken that he was improperly classified as a level four offender based upon improper subjective impressions of his demeanor, his argument is without merit. Here, the "Background Information" section of Parkman's Risk Assessment and Offender Profile Report provided that

John Parkman is a 52–year–old Caucasian male. He was convicted of Sexual Abuse–1st Degree and Burglary–2 Counts on 5/6/85. Documentation indicates this offender broke into the residence of an adult female stranger, raped her and stole money from her. The second count of Burglary had been first adjudicated on 4/23/85. Apparently this offender changed his plea from not guilty to guilty and this conviction was then adjudicated with his target offense. Other documented criminal convictions include Burglary of Habitation with Intent to Commit Rape (3/31/80). In this offense he broke into a pregnant adult female's residence and raped her.[14]

In addition, the "Summary of Interview and other Findings" section provided as follows, including just one sentence, among the fifteen within the section, regarding Parkman's demeanor during the assessment process:

This offender was interviewed on 1/11/06. His interviewer reported that he presented himself as generally forthcoming and revealed some important aspects of his offenses. He initially minimized his offenses and blamed his abuse of alcohol. *He smiled and laughed during his interview and appeared to enjoy discussing his attacks.* He later changed his story and admitted he broke into many houses to rape women, first admitting he had done this 6 times, then he increased that number to 8 and admitted he had forced girlfriends to have sex as well. He described having had thoughts and fantasies of rape beginning at 30, admitted he committed numerous rapes until he was 40. He claimed these rapes were the result of his rage toward women and desire to punish them. He admitted he has also used alcohol with women to disadvantage them and have sex with them. He showed more concern for the practical consequences of his misconduct to himself as opposed to

---

14.  The record reflects that the former offenses occurred in Arkansas, the latter in Texas.

genuine remorse for the wrongfulness of his behavior or the impact of his abuse on his victims. He described himself as lacking a conscience in the past, yet tried to make the point that this was no longer the case.

This offender was charged in two cases with Burglary, Rape and Robbery in 1993 involving his attack of two adult female strangers in their homes. These cases were dismissed on 11/02/95 because this offender was not given a speedy trial. Documentation indicates both victims identified this offender as their attacker. A third female reported she was raped on 10/19/93 and picked this offender from a group of photos. There are no other records on these rapes.

(Emphasis added.) The Report then concluded:

*Factors Justifying the Community's Need to Know:* This offender has multiple adult female victims of rape for whom he was charged and convicted and others for whom he was charged but not convicted due to lack of a speedy trial. He admits he has forced women known to him to engage in sex against their will and that he has given other women alcohol to disadvantage them to the point they could not resist his assaults. It is likely he has other, undetected victims of rape. His history of violence, especially toward women, is likely more extensive than his official record reflects. He reports he has completed a sex offender treatment program. He is not engaged in aftercare. On October 30, 2006 the Sex Offender Assessment Committee reviewed this case file and voted to assess this offender at Level 4 to permit the broadest and most visible means of community notification.

*Community Impact Risk:* 4

In its findings of fact and conclusions of law upon administrative review, the Committee specifically found that the documents it received pursuant to Ark.Code Ann. § 12–12–917(c) reflected:

a) There are multiple victims. The Petitioner was convicted of Burglary and Sexual Abuse in the First Degree on May 6, 1[9]85 in the Circuit Court of Pulaski County, Arkansas. CR 84–3137.

b) The Amended Felony Information in CR 84–3137 indicates that on or about the 18th day of July 1984, the Petitioner did feloniously engage in deviate sexual activity with an adult female by forcible compulsion.

c) On July 3, 1980 in Texas, the Petitioner was sentenced to not less than 5 years nor more than 15 for burglary of a habitation with intent to commit rape.

d) The official version of the crime resulting in the 5 years nor more than 15 year sentence in Texas indicates that the Petitioner raped a female that was seven months pregnant while holding a pillow over her head.

e) The Petitioner in 1995 was the defendant in two criminal cases that were dismissed by Judge John B. Plegge for failure to provide a speedy trial. The case numbers in these cases were CR 93–2782 and CR 93–2942. Both cases were in Seventh Division of Circuit Court in Pulaski County.

f) According to the case report for case number 93–2782, the Petitioner on June 10, 1993 forced an adult female to have sex with him after holding a knife to her throat.

g) According to the Crime Scene Search Unit Work List, in connection with case number 93–2942, the Petitioner on January 5, 1993 forced an adult female to perform oral sex on him

after which he put his penis and finger in her vagina.

h) Interview conducted by SOSRA on November 11, 2006, revealed:

i) Petitioner admitted to breaking into many houses to rape women.

ii) Petitioner admitted he forced girl-friends to have sex with him.

iii) Petitioner admitted to having committed numerous rapes by the time he reached the age of 40.

iv) Petitioner claimed that the rapes were the result of alcohol abuse and his rage toward women and a desire to punish them.

v) Petitioner admitted to using alcohol with women in an effort to take advantage of them.

The Committee then upheld Parkman's assessment of level four.

First, it should be noted that Parkman has failed to point this court to any authority for the proposition that it was improper for the Committee to consider his demeanor during the assessment process in calculating his assessment level. Nonetheless, it is evident from reviewing the record, as well as Parkman's Risk Assessment and Offender Profile Report, as set forth in pertinent part above, and the findings of fact and conclusions of law upon administrative review, that the Committee in no way based Parkman's classification as a level four offender improperly upon his demeanor. Parkman was convicted of two separate sexual assaults on two separate women, each in her own home. In addition, he had been identified in two other rape cases, with the charges only being dismissed due to the lack of speedy trial. Further, Parkman himself admitted that he had been involved in forced sex acts anywhere from six to eight times; that because he was a plumber, he was able to obtain women's addresses from them after meeting them by discussing plumbing is-

sues; that when he would drink, he thought about raping; that he could not stand rejection and raping made him feel better; and that his motives for rape were "power and control, evoking fear, and expressing anger." In addition, Parkman was given a diagnostic impression of "Paraphilia NOS (non-consent)." With all of this in mind, we cannot say that the Committee improperly assessed Parkman based on any alleged improper subjective impressions, and we hold that substantial evidence existed to support the Committee's assessment of Parkman as a level four offender. Because substantial evidence existed to support the Committee's assessment, it automatically follows that its assessment cannot be classified as unreasonable or arbitrary. *See, e.g., Collie v. Arkansas State Med. Bd.,* 370 Ark. 180, 258 S.W.3d 367 (2007).

For all of the foregoing reasons, we affirm.

IMBER, J., not participating.