SLIP OPINION

Cite as 2017 Ark. 186

# SUPREME COURT OF ARKANSAS

No. CV-16-747

| | |
|---|---|
| RICKY LYNN LENARD, SR.<br>APPELLANT<br><br>V.<br><br>WENDY KELLEY, DIRECTOR,<br>ARKANSAS DEPARTMENT OF<br>CORRECTION; JOHN FELTS,<br>DIRECTOR, ARKANSAS BOARD OF<br>PAROLE; SHERI FLYNN,<br>ADMINISTRATOR, SEX OFFENDER<br>COMMUNITY NOTIFICATION<br><br>APPELLEES | Opinion Delivered May 18, 2017<br><br>PRO SE APPEAL FROM THE JEFFERSON<br>COUNTY CIRCUIT COURT<br>[No. 35CV–15–534 ]<br><br>HONORABLE JODI RAINES<br>DENNIS, JUDGE<br><br>AFFIRMED IN PART; REVERSED AND<br>REMANDED IN PART. |

**PER CURIAM**

Pending before this court is an appeal filed by Ricky Lynn Lenard, Sr., from the denial of his petition for declaratory relief and a writ of mandamus regarding decisions made by the Arkansas Board of Parole (Board) on April 29, 2014, to rescind a finding that he was eligible for transfer, and a later decision made by the Board on March 30, 2015[1] to deny Lenard's transfer eligibility for an additional period of two years. Lenard alleges on appeal, as he did below, that the Board had erroneously rescinded his transfer eligibility based on a disciplinary action taken by the Arkansas Department of Correction (ADC). Lenard further

---

[1] The Board held two separate hearings with respect to Lenard's eligibility for transfer. The first was on February 26, 2015, and the Board's decision was rendered on March 4, 2015. A second hearing, this one considering a request for reconsideration, was held on March 22, 2015, and the Board came to the same conclusion and entered its final decision on March 30, 2015.

contends that the Board subsequently denied his transfer eligibility by erroneously taking into consideration a Sex Offender Community Notification Assessment (SOCNA) that was implemented in accordance with the Sex Offender Registration Act (SORA), codified at Arkansas Code Annotated sections 12-12-901 to −927 (Supp. 2009).  For the reasons stated below, we affirm in part and reverse and remand in part.

Before addressing the merits of Lenard's declaratory action, it is necessary to set forth the facts surrounding Lenard's underlying convictions that led to his current incarceration in the ADC.  In November 2010, Lenard pleaded nolo contendere to fourth-degree sexual assault, was sentenced to time served in the Jefferson County jail, and ordered to register as a sex offender.  On March 5, 2012, Lenard was notified by an official with the Sex Offender Screening and Risk Assessment Committee (SOSRA) [2] that he had been assigned a level-three risk assessment for purposes of community-notification requirements, due to Lenard's failure to appear for his scheduled assessments.  Then, in July 2012, Lenard entered a negotiated plea to charges of felony theft of property and criminal mischief and was sentenced to 60 months' probation.

Subsequently, in May 2013, Lenard entered a negotiated plea to violation of his probation terms with respect to the above-cited 2012 theft and criminal-mischief convictions and for failing to register as a sex offender as required by his 2010 conviction. Lenard was sentenced to an aggregate term of 60 months' imprisonment for all three crimes.

---

[2] SOSRA is the state agency responsible for assessing sex offenders and SOCNA is the agency responsible for implementing community-notification requirements consistent with the assessment made by SOSRA.

SLIP OPINION

The initial sentencing order classified Lenard as having committed an aggravated sex offense, and Lenard was designated as a sexually violent predator. Lenard filed a motion to correct the order. Consequently, the trial court entered an amended sentencing order on July 15, 2013, removing the designation of Lenard as a sexually violent predator and further instructing that Lenard was not required to register as a sex offender and was not required to undergo an evaluation at a facility designated by the ADC. *See Lenard v. State*, 2014 Ark. 478, at 1–2 (per curiam) (noting that the sentencing court had removed the erroneous sex-offender indicators by an amended order).

On September 26, 2013, following a hearing, the Board determined that Lenard was eligible for release to supervision by the Arkansas Department of Community Correction on the condition that he complete a substance abuse education program prior to his release, which Lenard completed in October 2013. On November 26, 2013, Lenard was notified by an administrator with SOCNA that he had been assessed as a level-three offender by default for his failure to cooperate with SOSRA.

On January 7, 2014, a hearing was conducted wherein Lenard was found guilty of a major disciplinary infraction,[3] and his punishment included 30 days' punitive isolation, a reduction in class status, and the forfeiture of 273 days' good-time credit. Because of this infraction, the Board rescinded Lenard's transfer eligibility in April 2014. In the following year, the Board held two separate hearings and issued a final decision in March 2015 that

---

[3] It was found that Lenard had agreed to allow another inmate, Gary Stotts, to deposit money into Lenard's account for the purpose of purchasing items on behalf of Stotts, who had been placed on commissary restrictions.

denied Lenard's transfer eligibility for two years. The Board also concluded that Lenard was required to participate in the Reduction of Sexual Victimization Program (RSVP) before becoming eligible for transfer. It is from the above-cited actions of the ADC, the Board, and SOCNA that gave rise to this action that is currently on appeal before this court.

On October 2, 2015, and on January 4, 2016, Lenard filed two separate petitions for declaratory relief. Attached to the petitions were documents related to the Board's decisions rescinding his transfer eligibility and subsequently denying his transfer eligibility for an additional two years. A review of the petitions and attached documents reflect that Lenard had challenged the requirement that he register as a sex offender with the ADC as a result of his conviction for failing to register as a sex offender; that the Board had erroneously rescinded his transfer eligibility in 2014 because he was innocent of the disciplinary infraction; that the Board had illegally denied his transfer eligibility in 2015 based on his classification as a level-three offender implemented by SOCNA, despite the fact that he had been convicted of a misdemeanor sex offense.

The circuit court denied his petitions, finding that Lenard's request for relief was barred by the doctrine of sovereign immunity and, alternatively, finding that Lenard's allegations lacked merit. On appeal, Lenard makes the same arguments raised below and set forth above regarding the denial of his eligibility for transfer in 2014 and again in 2015.

As an initial matter, appellees challenged venue because Lenard's petitions amounted to an action under the Administrative Procedure Act and should have been brought in either Pulaski County, Arkansas, or in Lee County where Lenard is currently incarcerated. A petition for declaratory relief is civil in nature and is properly filed in the county in which

the defendants, or keeper of the records of the ADC, are located. *Wiggins v. State*, 299 Ark. 180, 181–82, 771 S.W.2d 759, 760 (1989). The director of the ADC is located in Pine Bluff, Jefferson County, Arkansas. SOCNA is a division of the ADC, and the Board resides in Pulaski County but conducts its hearings at units controlled and operated by the ADC and in conjunction with the ADC. Moreover, when venue is appropriate as to one defendant, then it is only proper as to co-defendants who are jointly liable with the resident defendant. *Boatmen's Nat'l Bank of Ark. v. Cole*, 329 Ark. 209, 213, 947 S.W.2d 362, 364 (1997). Therefore, this petition for declaratory relief was filed in the proper county even though Lenard is currently incarcerated in Lee County and the Board resides in Pulaski County. [4]

The clearly-erroneous standard set forth in Rule 52(a) is the standard of review for bench trials but not necessarily for all declaratory-judgment actions. *Poff v. Peedin*, 2010 Ark. 136, at 5–6, 366 S.W.3d 347, 350. We have held that a pro se petition for declaratory relief challenging the conditions of incarceration is properly treated as a petition for postconviction relief where the clearly erroneous standard is applied. *Crawford v. Cashion*, 2010 Ark. 124, at 1, 361 S.W.3d 268, 270 (per curiam).[5] However, appellate courts should

---

[4] In any event, under Rule 12(b) of the Arkansas Rules of Civil Procedure, a party must assert the defense of improper venue in its answer or in a motion filed prior to or simultaneously with its answer, and if he fails to do this, he waives this defense. Ark. R. Civ. P. 12(h)(1); *Gailey v. Allstate Ins. Co.*, 362 Ark. 568, 573, 210 S.W.3d 40, 43 (2005). Here, respondents objected to venue but not on the basis of the residency of a co-respondent. Therefore, any objection to venue pertaining to the Arkansas Parole Board was waived.

[5]In *Crawford*, the appellant challenged the constitutionality of the ADC's actions, alleging that the ADC had violated due process, and sovereign immunity was not an issue.

not apply the clearly-erroneous standard if review of the underlying basis for the action is governed by another standard. *Poff*, 2010 Ark. 136, at 5–6, 366 S.W.3d at 350.

We have also held that in an appeal from a decision granting summary judgment, where the circuit court makes its decision based on whether the pleadings state sufficient facts for an exception to sovereign immunity, we apply the abuse-of-discretion standard of review. *Smith v. Daniel*, 2014 Ark. 519, at 5, 452 S.W.3d 575, 578. In those instances, we treat the facts alleged in the complaint as true and view them in the light most favorable to the party who filed the complaint. *Id.* Here, the circuit court dismissed Lenard's petitions as barred by sovereign immunity based on his pleadings and attached documents and concluded that Lenard had not stated sufficient facts giving rise to an exception to the application of the doctrine of sovereign immunity. Therefore, an abuse-of-discretion standard is properly applied in this case. With respect to Lenard's petition for mandamus relief, if the right to declaratory relief is not established there is no basis for a writ of mandamus. *Cridge v. Hobbs*, 2014 Ark. 153, at 2 (per curiam).

If a claim is made against the State, it is barred by the doctrine of sovereign immunity, unless an exception to sovereign immunity applies. *Mitchem v. Hobbs*, 2014 Ark. 233, at 3–5 (per curiam) (citing *Ark. Dep't of Cmty. Corr. v. City of Pine Bluff*, 2013 Ark. 36, at 4, 425 S.W.3d 731, 734). This court has recognized three ways in which a claim of sovereign immunity may be surmounted: when the State is the moving party seeking specific relief; when an act of the legislature has created a specific waiver of sovereign immunity; and when the state agency is acting illegally or if a state-agency officer refuses to do a purely ministerial action required by statute. *Mitchem*, 2014 Ark. 233, at 3–5. This court has long recognized

SLIP OPINION

that a state agency may be enjoined if it can be shown that the agency's action is ultra vires or outside the authority of the agency. *Fitzgiven v. Dorey*, 2013 Ark. 346, at 13, 429 S.W.3d 234, 241–42. We have held that for an act to be ultra vires, it must be beyond the agency's or the officer's legal power or authority. *Id.*; *see also Hobbs v. Baird*, 2011 Ark. 261, at 3–5 (affirming circuit court's order granting declaratory relief based on the ADC's misinterpretation of parole statute).

Here, Lenard's allegation that he was erroneously convicted of a disciplinary infraction in 2014 does not establish that the ADC acted without statutory authority. The ADC has the authority to prescribe rules and regulations to maintain order and discipline and to conduct proceedings for dealing with violations. Ark. Code Ann. § 12-29-103 (Supp. 2009). Moreover, the Board retains the power to determine which persons shall be placed on parole and the conditions upon which the ADC may transfer the inmate to the Department of Community Correction. Ark. Code Ann. § 16-93-206(a)(1) and (b)(1) (Supp. 2009). Finally, in determining eligibility, the Board is authorized to consider whether an inmate has received a major disciplinary report against him or her that resulted in a loss of good-time credit. Ark. Code Ann. § 16-93-206(b)(1)(C)(i).

The record before this court shows that Lenard was provided with a hearing on the validity of the disciplinary charge, and the ADC was well within its statutory rights to impose a reclassification and loss of good-time credit. The Board also provided Lenard with a hearing and made the decision to rescind his transfer eligibility based on the ADC's conclusion that Lenard was guilty of an infraction. In view of the above, Lenard failed to demonstrate that the ADC or the Board had acted ultra vires or outside their authority by

disciplining Lenard or by rescinding his transfer eligibility. *Fitzgiven*, 2013 Ark. 346, at 13, 429 S.W.3d at 241–42. The circuit court did not abuse its discretion when it found that this claim against the ADC and the Board was barred by the doctrine of sovereign immunity. *Mitchem*, 2014 Ark. 233, at 3–5.

However, the same cannot be said as to the Board's denial of Lenard's transfer eligibility in March 2015. Lenard's petition and his argument on appeal, together with the documents included in the record, reveal that in March 2015, the Board denied Lenard's transfer eligibility for a period of two years based on the following stated grounds: "seriousness level of the crime," "age of the victim," and "prior criminal history."

The law is well settled that parole eligibility is determined by the law in effect at the time the crime is committed. *Lewis v. Hobbs*, 2014 Ark. 407, at 3, 443 S.W.3d 530, 532 (per curiam); *see also Bosnick v. Lockhart*, 283 Ark. 206, 207–08, 672 S.W.2d 52, 53 (1984). Moreover, transfer eligibility applies to persons who "commit *felonies* . . . and who shall be convicted and *incarcerated for those felonies*." *See* Ark. Code Ann. § 16-93-1301(c) (Supp. 2009) (emphasis added). Therefore, the Board's authority to grant or deny transfer must correspond to felonies for which the inmate is incarcerated.

As stated above, Lenard was convicted of, and was incarcerated for, theft of property, failure to register as a sex offender, and criminal mischief. The amended sentencing order reflects that the theft-of-property crime was classified as a Class B felony and was committed in April 2011; the criminal-mischief offense was classified as a Class C felony and was also

committed in April 2011, and the failure to register as a sex offender was classified as a Class C felony and was committed in May 2011.[6]

Arkansas Code Annotated section 16-93-1202(10)(A)(b) (Supp. 2009) designated specific offenders who would be entitled to transfer to the Department of Community Correction. This "target group" of offenders included felons convicted of theft, criminal mischief, and all other Class C and Class D felonies that were neither violent nor sexual. Ark. Code Ann. § 16-93-1202(10)(A)(i).[7] Offenses defined as "sexual" were specifically designated as those offenses listed in sections 5-14-101 et seq. Ark. Code Ann. § 16-93-1202(10)(A)(iii). The sexual offenses designated in this code section do not include the offense of failure to register as a sex offender, which is set forth in section 12-12-904 (Supp. 2009). Thus, Lenard falls within this "target group" that shall be eligible for transfer to the Department of Community Correction after serving one-third or one-half of their sentences. Ark. Code Ann. § 16-93-1301(c)(3)(A).

The Board acted outside its authority by denying Lenard's transfer eligibility in March 2015. The basis for our conclusion will be set forth below and separately analyzed

---

[6] The relevant transfer- and parole-eligibility statutes were amended by Act 570 on March 22, 2011. Act 570 did not contain an emergency clause and therefore did not become effective until ninety days after its enactment. *Priest v. Polk*, 322 Ark. 673, 681–82, 912 S.W.2d 902, 907 (1995). Consequently, the statutes that were in effect at the time Lenard committed the above-cited crimes were controlled by the relevant code sections in effect in 2009 that set forth the procedures and factors to be taken into consideration for determining parole or transfer eligibility.

[7] Class A and Class B felons who committed controlled substance offenses were also included in this group, as well as unclassified felonies for which the prescribed limitations on a sentence do not exceed the prescribed limitations for a Class C felony that are neither sexual nor violent. Ark. Code Ann. § 16-93-1202(10)(A)(i).



with respect to the Board's decision to delay reconsideration for two years, together with the three specific reasons set forth by the Board for denying Lenard's transfer eligibility.

*Two-Year Delay*

The Board may deny transfer and delay reconsideration for a maximum of two years if the offender has committed any homicide, first-degree sexual assault, second-degree sexual assault; first-degree battery; first-degree domestic battery; and certain designated Y felonies. Ark. Code Ann. § 16-93-206(c)(1) and (c)(2)(C). Lenard was not convicted of or incarcerated for any of the crimes enumerated in this section, but was convicted and incarcerated for one Class B felony and two Class C felonies. Furthermore, felons, such as Lenard, who have committed Class B and Class C felonies are deemed eligible for transfer after having served one-third or one-half of their sentences with credit for meritorious good time "depending on the *seriousness determination made by the Arkansas Sentencing Commission.*" Ark. Code Ann. § 16-93-1301(c)(3)(A) (emphasis added).

*The Seriousness of the Crimes*

The 2013 amended sentencing order under which Lenard is incarcerated classified the seriousness of his crimes in a manner that was consistent with the determination of the Arkansas Sentencing Commission as follows: level five for the Class B felony-theft charge and level three for failure to register and criminal mischief, which are both Class C felonies. Ark. Code Ann. § 16-90-803 (Repl. 2006) (authorizing the sentencing commission to determine the levels of the seriousness of offenses from levels I through X); 154–00-001 Ark. Code R. § 4 (Weil 2008). Under the guidelines set forth by the Arkansas Sentencing Commission, the seriousness levels for theft, failure to register, and criminal mischief fall

SLIP OPINION

below the line, resulting in a sentence of one-third to one-sixth of the time imposed. *See Beavers v. State*, 2016 Ark. 277, at 3, 495 S.W.3d 76, 79; 154–00–001 Ark. Code R. § 4 (Weil 2008).

Applying the above-cited statutory parameters, Lenard has shown that the Board miscalculated his transfer eligibility in a manner inconsistent with the law in effect at the time he committed the crimes charged. *Lewis*, 2014 Ark. 407, at 4, 443 S.W.3d at 532. Lenard was sentenced in 2013 to an aggregate term of 60 months' imprisonment, and based on the seriousness level of his crimes as reflected in the sentencing order and in accordance with the Arkansas Sentencing Commission, he is eligible for parole after he had served 20 months, which is one-third of the aggregate 60-month sentence. *Beavers*, 2016 Ark. 277, at 3, 495 S.W.3d at 79; 154-00-001 Ark. Code R. § 4. Therefore, the crimes for which Lenard is incarcerated do not fall within a seriousness level that authorizes the Board's decision to deny Lenard's transfer eligibility in 2015 for an additional two years.

*Age of the Victim*

Lenard argued below and argues on appeal that his transfer eligibility was denied based on SOCNA's implementation of the level-three risk assessment, designating Lenard as a sexually violent felon, due to his failure to report for assessment as required by SORA. Ark. Code Ann. § 12-12-917(b)(4)(A)(i). Lenard's allegations are supported by the Board's determination that his transfer eligibility was denied because of the "age of the victim." This is so because the age of the victim is not a relevant factor with respect to the crimes of theft, failure to register as a sex offender, and criminal mischief.

As stated above, in 2010, Lenard was convicted of fourth-degree sexual assault pursuant to section 5-14-127(a)(2) (Repl. 2006), which is a Class A misdemeanor. The offense falls within the purview of SORA. Ark. Code Ann. § 12-12-903(12)(A)(f). Lenard was not incarcerated in the ADC for that offense and was not subject to incarceration in the ADC because it was not a felony offense. Ark. Code Ann. § 5-4-402(b) (Repl. 2006) (a defendant convicted of a felony shall be committed to the Arkansas Department of Correction); *see also Jones v. State*, 270 Ark. 328, 330, 605 S.W.2d 7, 9 (1980) (We take judicial notice of the fact that a sentence to the Department of Correction is only ordered in felony cases.).

After his conviction, Lenard did not comply with the requirements of SORA, in that he repeatedly failed to appear for scheduled assessments on March 15, 2011, November 23, 2011, and February 12, 2012. Consequently, Lenard was assessed as a level-three offender for purposes of community notification. Clearly, SOCNA had the authority to implement the designation of Lenard as a level-three offender under the provisions of SORA. Ark. Code Ann. § 12-12-917(b)(4)(A)(i). However, the implementation of a level-three risk assessment by SOCNA is not a means through which a classification of a felony can be upgraded or a misdemeanor offense can be transformed into a felony offense.

We have held that the SORA is not criminal in nature, including its assessment process. *Parkman v. Sex Offender Screening & Risk Assessment Comm.*, 2009 Ark. 205, at 11, 307 S.W.3d 6, 13. The sex-offender regulations set the parameters as to the extent of information to be made public, depending on the offender's level of dangerousness, pattern of offending behavior, and the extent to which the information will enhance public safety.

*Burchette v. Sex Offender Screening & Risk Assessment Comm.*, 374 Ark 467, 469, 288 S.W.3d 614, 616 (2008) (citing Ark. Code Ann. § 12-12-913(c)(2)(B)). Thus, classification as a level three offender is part of a civil regulatory system, that involves a determination of the scope of community notification, as well as the placement of work and residency limitations for purposes of enhancing public safety. *Parkman*, 2009 Ark. 205, at 13–16, 307 S.W.3d at 15. The sex-offense registration scheme under SORA imposes civil but not criminal penalties. *Parkman*, 2009 Ark. 205, at 11, 307 S.W.3d at 13.

Lenard was convicted and is currently incarcerated for failure to register as a sex offender under section 12-12-904, which, as explained above, is not designated as a sexual offense under section 16-93-1202(10)(A)(iii). Moreover, the amended sentencing order under which Lenard is currently incarcerated specifically exempts Lenard from additional registration requirements pursuant to SORA and indicates that Lenard had not been adjudicated guilty of a sex offense, had not committed an aggravated sex offense, and had not been alleged to be a sexually violent predator subject to evaluation by the ADC.

While Lenard clearly remains subject to civil regulations resulting from his failure to cooperate in accordance with SORA, and he was subject to a criminal sanction in the form of a conviction of a Class C felony due to this failure, he is not subject to a further criminal penalty under the above-cited statutes governing transfer eligibility. In sum, the Board miscalculated Lenard's parole eligibility by applying a civil designation of Lenard as a level–three sex offender to increase and reclassify the level of the offense for which he is currently incarcerated and to erroneously take into consideration the age of the victim for a misdemeanor offense for which he is not incarcerated. The Board exceeded its statutory

authority by considering a factor that had no bearing on Lenard's eligibility for transfer in relation to a Class C felony offense of failure to register as a sex offender.

*Prior Criminal History*

The Board also based its decision upon Lenard's prior criminal history. Again, this finding supports Lenard's allegations that the Board primarily considered his 2010 misdemeanor sex offense, which had been assessed as a level-three offense by SOCNA. The Board is authorized to consider an inmate's prior criminal history to lengthen the period of confinement as applied to parole eligibility. *Michalek v. Lockhart*, 292 Ark. 301, 304, 730 S.W.2d 210, 211 (1987). However, parole eligibility is determined by an inmate's criminal history based on the inmate's commission of previous crimes classified as Class Y, Class A, or Class B felonies. Ark. Code Ann. §§ 16-93-606 to -607 (Repl. 2006). Lenard's prior criminal history falls outside the scope of this statutory authorization. The record demonstrates that before his 2013 convictions for theft, failure to register, and criminal mischief, Lenard had been convicted in 2008 of two prior felonies that included theft of property and fraudulent use of a credit card, which, according to the judgment and commitment order, were Class C felonies. Ark. Code Ann. § 5-36-103(a)(2) (Repl. 2006); Ark. Code Ann. § 5-37-207(b)(1) (Repl. 2006). Moreover, Lenard's 2010 conviction for a sex offense was a Class A misdemeanor. Again, by taking into consideration Lenard's prior criminal history in denying his eligibility for transfer, the Board appeared to consider Lenard as having been convicted of a prior felony classified as A, B, and Y felonies, apparently based on the civil regulatory assessment as implemented by SOCNA designating Lenard as a level–three sex offender. Again, there is no statutory basis for the Board to deny transfer based

14

on Lenard's prior criminal history of having committed two C felonies. Ark. Code Ann. §§ 19-93-606 to -607.[8]

*Participation in the RSVP*

Finally, the Board imposed a condition for transfer eligibility that Lenard complete the RSVP, which is a course of treatment for sexual offenders incarcerated in the ADC. *Seamster v. State*, 2009 Ark. 258, at 1, 308 S.W.3d 567, 568. Lenard is a misdemeanor sex offender who is currently incarcerated in the ADC, but he is not incarcerated for a felony sex offense. Instead, Lenard is incarcerated under an executed sentencing order that specifically exempted Lenard from further sex-offense-registration requirements or evaluation by the ADC. Moreover, Lenard would not have been committed to the ADC for a misdemeanor sex offense pursuant to statutory authority, and it follows then that Lenard would not be subject to participation in programs specifically designed for felony sex offenders that are committed to the ADC due to the nature and classification of the offense. *See* Ark. Code Ann. § 5-4-402; *Jones*, 270 Ark. at 330, 605 S.W.2d at 9.

---

[8] While prior criminal history is relevant to the Board's risk needs assessment of inmates eligible for transfer, there is a distinction between inmates who have committed serious felonies, and those who have been convicted of felonies such as those for which Lenard was convicted. Specifically, pursuant to section 16-93-206(b)(1)(C)(iii) inmates who have not been convicted of felonies set forth in section 16-93-206(c)(1), a risk needs assessment is relevant to a determination whether "special conditions are placed on an inmate" who is eligible for transfer. On the other hand, inmates who have been convicted of felonies set forth in 16-93-206(c)(1), a risk needs assessment is made for the purpose of determining if there is "a reasonable probability that the inmate can be released without detriment to the community." Ark. Code Ann. § 16-93-206(c)(2)(B).

We have repeatedly held that parole eligibility falls clearly within the domain of the executive branch and specifically the ADC, as fixed by statute, and the judiciary has no jurisdiction over how parole eligibility is determined or the conditions to be placed on it once the sentence is placed into execution. *Johnson v. State*, 2012 Ark. 212, at 5. However, determinations of transfer or parole eligibility as well as the conditions placed on it must rationally correspond to the *felonies* for which the inmate had been *convicted and incarcerated*. *See* Ark. Code Ann. § 16-93-1301(c). Participation in a program designed for felony sex offenders is not a condition that is authorized by statute, regulations, or the executed sentencing order. The Board and the ADC are authorized to fix conditions for parole eligibility that are consistent with Lenard's felony conviction for failure to register as a sex offender and his failure to cooperate with the assessment requirements under SORA, but participation in the RSVP program is a condition that is wholly inconsistent with the conviction and sentence imposed for the Class C felony of failure to register as a sex offender. Participation in an assessment process pursuant to SORA is clearly a condition that would be authorized under the prevailing authority and rationally relates to the offense for which Lenard is currently incarcerated.

For the reasons set forth above, the circuit court abused its discretion by denying Lenard's petition for declaratory relief with respect to the denial of his transfer eligibility on March 30, 2015. Therefore, we reverse in part and remand this case to the circuit court for entry of an order directing the Arkansas Parole Board and the Arkansas Department of Correction in cooperation with the Sex Offender Community Notification Assessment

Committee to determine Lenard's transfer eligibility and the conditions placed on it consistent with this opinion.

Affirmed in part; reversed and remanded in part.

*Ricky Lynn Lenard*, pro se appellant.

*Leslie Rutledge*, Att'y Gen., by:  *Christian Harris*, Ass't Att'y Gen., for appellee.